[Crim. No. 2449.   First Dist., Div. Two.   June 19, 1947.]

THE PEOPLE, Respondent, v. LLOYD H. GARRISON, Appellant.

J. R. Deasy and Simeon E. Sheffey for Appellant.

Fred N. Howser, Attorney General, Miriam E. Wolff, Deputy Attorney General, Ralph E. Hoyt, District Attorney, Folger Emerson, Assistant District Attorney, and John S. Cooper, Deputy District Attorney, for Respondent.

NOURSE, P. J.—Defendant appeals from a judgment of conviction based on a verdict finding him guilty of a conspiracy to violate section 274 of the Penal Code and from the order denying his motion for a new trial.

The indictment, in two counts, charged defendant Garrison and Joseph Sieff, both chiropractors, in the first count with murder of Angelina Dambrosio, in the second count with a conspiracy to treat said Angelina Dambrosio with the intent to procure an illegal abortion. The theory of the People with respect to the murder count was that the death of Angelina Dambrosio was caused by an abortion produced by appellant Garrison pursuant to the alleged conspiracy.

During the trial the indictment as to the defendant Sieff was dismissed pursuant to the provisions of section 1099 of the Penal Code. The court instructed the jury that Joseph Sieff and the witnesses for the prosecution, Green, Menezes, Minasian and Vukman, who according to their own testimony were friends of the deceased and had each tried in some way to assist her in getting rid of her pregnancy were accomplices as a matter of law with respect to the provisions of section 1111, Penal Code.

The jury found defendant Garrison guilty on the conspiracy count and not guilty on the murder count.

Appellant contends that the verdict of guilty of a conspiracy to commit an illegal abortion is inconsistent with the verdict of not guilty of murder, because the latter verdict negatives treatment for the purpose of illegal abortion as the cause of death. There is no merit in this contention. Normally a verdict of acquittal of one of several counts is not deemed an acquittal of any other count. (Pen. Code, § 954.) The fact that the jury in this case was not sufficiently convinced that the death was the result of an unlawful treatment did not imply a finding that no such treatment with unlawful intent pursuant to a conspiracy had taken place even without causing death. Compare *People* v. *Guerrero,* 22 Cal.2d 183, 189 [137 P.2d 21].

Appellant's main contention is that there is not sufficient evidence in the record to sustain his conviction on the conspiracy charge also because of lack of corroboration of the testimony of the accomplices. It must be conceded that the inculpatory evidence in this case is mostly given by witnesses designated as accomplices by the trial judge. Respondent points out certain corroborating evidence, mostly from testimony of appellant as witness in his own defense, which according to respondent fulfills the requirements of section 1111, Penal Code.

Appellant testified that he had examined and treated the girl, who was sent to him by Dr. Sieff in the early part of March, 1946, for an inflammation of the vagina. Treatment was given with different apparatus in defendant's office and with instruments also in the girl's home in Oakland when she had a fever. Instruments used included a speculum, spongesticks and forceps. He also gave her vitamin pills. She paid him $40 of a fee of $150 agreed on for the whole treatment. He talked about the case three times with Dr. Sieff on the telephone and once at a meeting which they both attended. He also treated her for influenza. He did not consult with a physician when her condition became very serious. Because of the inflamed condition he could never make a complete internal examination, but such examination as he could make did not show that she had recently suffered an abortion. With respect to a check of $100 which Dr. Sieff testified to having received from him for the purpose of making a refund to the witness Minasian who allegedly had procured the money for defendant's treatment, defendant testified that he had given the check, blank as to name of payee, to Dr. Sieff as a loan, not for Minasian whom he did not know. Before the grand jury he refused, in accordance with advice of counsel to discuss the check as it might incriminate him.

Dr. Ernest Jackson, physician, and J. W. Newfeld, Director of Berkeley Clinical Laboratory, testified that at the end of January, 1946, a Friedman pregnancy test made with a specimen taken from Angelina Dambrosio was positive, which result usually (except for two per cent of error) proves pregnancy. Dr. Jackson also testified that he gave her penicillin because she insisted that she had gonorrhea, although he could not demonstrate it. His examination did not indicate medical necessity of an abortion.

Dr. V. E. Koerper, assistant resident at Highland Hospital, testified that when in the evening of March 21, 1946—this was

the last day on which she visited defendant—the girl was received in the hospital she was in a most serious condition because of a generalized peritonitis of which she died on the 10th of April, 1946.

Dr. Gertrude Moore who performed the autopsy testified that the generalized peritonitis which caused the death was caused by a ruptured ovarian abscess caused by colon bacilli which had entered the ovary from the outer genitalia in consequence of a trauma (injury). The most frequent causes for such trauma were first childbirth and next abortion, but there were also other causes. There was no evidence of pregnancy. If an abortion had been performed a few days before death her examination would have revealed it.

██ ▪ Although the decisions with respect to the scope and degree of corroboration required by section 1111, Penal Code, are in conflict and confusion (*People* v. *Collier*, 111 Cal.App. 215, 228 [295 P. 898]) the decisions of our Supreme Court leave no doubt that to be sufficient the corroborative evidence in itself must be of an inculpatory character and must tend without aid of testimony of accomplices to implicate the defendant in the commission of the crime. *People* v. *Shaw*, 17 Cal.2d 778, 802, 803 [112 P.2d 241] ; *People* v. *Hoyt*, 20 Cal. 2d 306, 312 [125 P.2d 29] ; *People* v. *Davis*, 210 Cal. 540, 555 [293 P. 32].

██ We are compelled to hold that without the evidence of the accomplices the evidence, available as corroboration, has no substantial connection with any crime and is consistent with an innocent lawful treatment of the patient by defendant and a termination of the pregnancy, unconnected with his treatment, at any time after the end of January. There is in the corroborating evidence nothing that would indicate that treatment for an inflammation of the vagina was improbable, or which connects the character of the treatment or of the instruments used as testified to by appellant with an intent to cause an abortion thereby. Neither is there in the corroborating evidence any indication that the understanding between defendant and Dr. Sieff with respect to the patient related to any illegal purpose. The fact that appellant did not consult a practicing physician and surgeon, notwithstanding the serious condition of his patient, cannot be said to point in itself to the covering up of a crime as such attitude is as a matter of experience not confined to cases in which any crime is involved.

"Circumstances which are consistent with an innocent purpose cannot be said to have a tendency to connect and implicate the defendant with the commission of the offense charged." 8 Cal.Jur. 180; *People* v. *Robbins,* 171 Cal. 466, 470 [154 P. 317].

Without the aid of testimony of accomplices there is no indication whatever of any relation between the check of $100 which defendant testified to have given to Dr. Sieff, and the crime charged. Appellant's refusal to discuss this check before the grand jury was the exercise of a constitutional privilege, which does not of itself directly and immediately tend to connect him with the crime charged against him. See *People* v. *Sawaya,* 46 Cal.App.2d 466, 471 [115 P.2d 1001].

This court is given no alternative but to set aside the conviction where the testimony of the accomplices is not corroborated in accordance with section 1111 of the Penal Code as that statute has been interpreted by the courts. *People* v. *Shaw, supra,* at page 804; *People* v. *Robbins, supra,* at page 469.

█ Respondent does not concede that the instruction that the witnesses Green, Menezes, Minasian, Vukman and Sieff were accomplices was proper but he does not press this point. As the jury was bound by and presumed to have followed the instruction given we see no reason to investigate its correctness at this time. However, the same question will probably come up, not necessarily with respect to exactly the same facts, on the new trial which must be ordered. We therefore think it useful to point out that the fact mentioned by appellant that the witness Elaine Vukman, of her own accord, administered quinine and castor oil to the girl for the purpose of producing a miscarriage does not in itself constitute her an accomplice of defendant, if she did not associate with defendant and participate with him in the commission of the crime charged. See *People* v. *Frahm,* 107 Cal.App. 253, 263 [290 P. 678].

█ Appellant's further argument that no overt acts were proved has no separate significance. Appellant conceded that he treated the girl and on or about the 9th day of March, 1946, used medical and surgical instruments on her in her home in Oakland. If it had been proved by sufficiently corroborated evidence that he did so in pursuance of the alleged conspiracy and to effect the object thereof, this treatment

would have constituted one of the overt acts alleged. No more than proof of a single alleged overt act by one of the conspirators is necessary to support the verdict. *People* v. *Shurtleff*, 113 Cal.App. 739, 741, 742 [299 P. 92].

The judgment and order appealed from are reversed and the cause is remanded for new trial.

Goodell, J., and Dooling, J., concurred.

A petition for a rehearing was denied July 3, 1947, and respondent's petition for a hearing by the Supreme Court was denied July 17, 1947.