[Crim. No. 2597.   Third Dist.   Jan. 12, 1956.]

THE PEOPLE, Respondent, v. JOHN HOUTMAN,
Appellant.

Desmond, Miller & Artz, E. Vayne Miller and John M. Welsh for Appellant.

Edmund G. Brown, Attorney General, and G. A. Strader, Deputy Attorney General, for Respondent.

SCHOTTKY, J.—Appellant John Houtman was charged by indictment with the crime of forgery, it being alleged in the indictment:

"That on the 7th day of January A. D. 1954 at the County of Sacramento, in the State of California, the said Defendant, JOHN HOUTMAN, did then and there willfully and unlawfully and feloniously with intent to defraud WILLIAM A. SUTTON COMPANY and AMERICAN TRUST COMPANY, San Francisco, California, make, draw and utter a forged instrument, which said instrument was in words and figures as follows:

| Twenty-Second-Mission Office AMERICAN TRUST COMPANY San Francisco, California | No. 62475 Nov. 27 1953 |
|---|---|
| Pay to the Order of H. O. RUTHERFORD - | $23,750.00 |
| THE SUM 23750 DOLLARS 00 CTS | Dollars |
| CASHIER'S CHECK | /s/ R. W. Hime |
| | Authorized Signature |
| | Teller |

and uttered and attempted to pass the same to WILLIAM A. SUTTON COMPANY as true and genuine, knowing the same to be altered and forged; . . ."

Appellant entered a plea of not guilty, was found guilty by the jury following a trial. His motion for a new trial was denied and judgment was pronounced. This appeal is from the judgment and from the order denying his motion for a new trial.

Appellant does not question the sufficiency of the evidence to support the judgment but urges as grounds for reversal that (1) the trial court committed reversible error when it instructed the jury as to how they should weigh and consider

the evidence in determining whether the testimony of one Ralph Woodey (an accomplice) had been corroborated; (2) the court committed reversible error in failing to instruct the jury not to discuss punishment; (3) the court committed reversible error in failing to give certain instructions; and (4) prejudicial misconduct of the court and district attorney.

Before discussing these contentions we shall give a brief summary of the evidence as shown by the record.

The forged check which appellant was accused of uttering was a purported cashier's check in the amount of $23,750 made payable to the order of H. O. Rutherford and in whose name it was endorsed. On the morning of January 7, 1954, a Ralph Woodey presented this check to the Sutton Motor Company in payment of a logging truck which he wished to purchase. Delivery of the truck was to be made that afternoon. Apparently, during the interim an investigation had been made and when Woodey returned police officers took him into custody. Shortly thereafter appellant was arrested about a block and a half from the establishment of the Sutton Motor Company.

According to the testimony of Woodey, some time in December, 1953, he met the appellant at a friend's home in Sacramento and discussed with the appellant the possibility of passing the forged check upon which this prosecution is based. It was then agreed that Woodey should pass the check at Sutton's Motor Company in Sacramento. A preliminary contact was made by Woodey, at which time he picked out a Dodge logging truck. On the morning of January 7, 1954, he returned to Sutton's and conversed with Mr. Sutton relative to the truck. Not having the check in his possession at that time, Woodey left Sutton's after having made arrangements for the purchase of the truck.

From Sutton's, Woodey then proceeded to a meeting place with appellant Houtman. The two conversed on the question of whether the check would be accepted, and after Woodey had stated that he thought Sutton's would take the check it was given to him by Houtman. They then drove to Sutton's in a pickup truck. Houtman let Woodey out near Sutton's and parked the truck. Woodey went to Sutton's and exhibited the check to Mr. Sutton. The logging truck was not ready so Woodey left and it was arranged that he would return at 2:30 p. m. for the truck and a draft for the change representing the difference between the amount of the check and the cost of the truck.

Woodey again left, taking the check with him, and went to the place where the pickup truck had been parked and waited there a few minutes until he saw Houtman. The two got into the pickup and drove a few blocks. Houtman asked what had happened and Woodey stated that he "guessed everything was all right."

They then went to a bar or restaurant known as the Twenty-Six Club and had a bottle of beer. Woodey told Houtman that Sutton's had kept the check for quite a while and he didn't know whether they had found out that it was no good. Appellant then stated that he would go back to Sutton's and inquire about the truck and if Sutton's knew there was anything wrong with the check they would be still trying to sell the truck. Houtman left and returned a few minutes later and told Woodey that the salesman had told him that the truck was to be delivered at 2:30.

Appellant and Woodey drove back toward Sutton's and Woodey got out at the corner near Sutton's, went into the office of Sutton's and gave the check to someone there. The man to whom the check was given took it into another office and then Woodey was placed under arrest by police officers. Appellant Houtman was apprehended while parked in the pickup truck about a block and a half from Sutton's and was also taken into custody.

It was arranged between Woodey and appellant that Woodey would get one-third of the proceeds of the check, Houtman would get one-third, and an unidentified person would get one-third.

In addition to the foregoing testimony of Woodey there was testimony that at Sutton's appellant contacted Mr. Strange, a salesman. Appellant asked if he "had anything in a logging truck," to which Mr. Strange replied, "No, we have this one, but it's sold." Appellant then asked if he was sure the deal was going through and Mr. Strange said "Yes." The truck in question at the time was the one which Woodey had negotiated to buy. There was also testimony that the check in question was a cashier's check and was one of a number that had been lost.

The purported signature of R. W. Hime, an employee of the American Trust Company, which appears on the check was not made by Mr. Hime, although it bears a very close resemblance to Mr. Hime's signature.

The name "H. O. Rutherford" which appears on the check as payee and as endorser is not in the handwriting of Mr.

Rutherford; the check was not endorsed by him, and he never received a check from anyone in the amount of $23,750.

Woodey was followed by a Mr. Shockley from Sutton's to the pickup truck. Shockley observed Woodey go past the truck a few feet, turn around, come back and get into the truck. Shockley then observed another unidentified man cross the street, get into the pickup and drive off. Shockley followed the truck and observed it to stop for about 10 minutes a few blocks away. The pickup then made a U-turn and after taking a route of several blocks, stopped. The two occupants of the truck got out, crossed the street and went into the Twenty-Six Club located on Broadway in Sacramento. Shockley noted the license number of the pickup truck as being A-33103. This was the same truck in which appellant was sitting when placed under arrest.

James V. P. Conway, a postal inspector and examiner of questioned documents, testified that he had compared the endorsement on the check with known exemplars of appellant's handwriting and that in his opinion the endorsement was written by appellant. Henry Silver, also an examiner of questioned documents, and George W. Young and Victor A. Fox, retired bank tellers, testified that they had made the same comparison and that in their opinion the endorsement was not written by appellant.

Appellant Houtman testified that he had lived in Sacramento for 15 years and had been employed by his twin brother, Harold Houtman, who had a trailer court on Stockton Boulevard and that he lived with his family at 3670 12th Street in Sacramento. He testified further that on the forenoon of January 7, 1954, he visited the Sutton Truck Lot on Broadway in company with Mr. Smith and Mr. Warren for the purpose of purchasing a gasoline truck and trailer; that he stopped at the Twenty-Six Club on Broadway after noon to eat lunch and that he there met a man he later learned was Ralph Woodey; that this was the first time he had ever met Woodey; that Woodey asked for a ride down to Sutton's at 14th and Broadway and that he "took him [Woodey] down to, left him off in front of Sutton's office, right up to the sidewalk." He testified further that he had no knowledge of the check or of Woodey's attempt to cash it at Sutton's and denied that any of the writing or endorsements on the check were his.

Dawna Adams, a witness for the defense, denied that Woodey had met appellant at the home of her husband and

herself in December, as Woodey testified, and stated that she had never seen appellant until the time of the first trial in April, 1954.

■ We shall first discuss the contention of appellant that the court committed reversible error when it gave the following instruction:

"An accomplice is one who is liable to prosecution for the identical offense charged against the defendant on trial. Whether or not any witness in this case was an accomplice as defined in these instructions is for the jury to determine from all the testimony and the circumstances as shown by the evidence. Well, under the law, the witness Woodey would be defined as an accomplice. To render a person an accomplice, he or she must in some manner knowingly and with criminal intent aid, abet, assist or participate in the criminal act."

Appellant cites *People* v. *Allison,* 200 Cal. 404 [253 P. 318], where the court held that in a criminal prosecution, where there is no conflict of evidence upon the question, it is error for the court in its instructions to submit to the jury the question of whether a certain witness was an accomplice in the commission of the crime charged, as the question is one of law for the court to say whether or not the acts make the witness an accomplice.

However, as pointed out by respondent, the first part of the instruction is general. It applies to all witnesses. There then follows a clear and direct statement that witness Woodey is an accomplice as a matter of law. The members of the jury could not question the plain meaning of the court's statement that "under the law, the witness Woodey would be defined as an accomplice." Furthermore, throughout the remainder of the instructions the court referred to Woodey as the accomplice and it is clear that the jury could not have failed to regard Woodey as an accomplice and appellant could not have been prejudiced by what was undoubtedly an inadvertent statement by the court in the first part of the instruction that it was for them to determine from all the evidence whether any witness in the case was an accomplice. The district attorney conceded throughout the trial and in his argument to the jury that Woodey was an accomplice and argued that he had been corroborated.

■■ Appellant argues also that "The prosecuting attorney committed misconduct and prejudicial reversible error

when he pointed at the defendant and improperly referred to extraneous matters and the court was guilty of misconduct in not properly admonishing the jury and in characterizing defendant's counsel as 'silly.' ''

The record shows that the following occurred during the closing argument of the chief deputy district attorney:

"MR. SHEEHY: Counsel hasn't correctly stated the rule on corroboration, but substantially so, and I will tell you what the rule is—the rule is this: That before you can convict a man on the testimony of an accomplice—and an accomplice is one who can be prosecuted for the same offense, which was done in this case—you must corroborate that testimony with some evidence directly connecting the other defendant with the crime. Now the only thing in this case that does that, and does it very clearly, is the fact that Mr. Houtman endorsed that check. Now that connects him with the crime. Actually, they do not deny that there was an attempt to pass this check. They don't deny that at all, and if they don't deny there was an attempt to pass that check by some one, and this man put that false endorsement on there——

"I guess he apparently doesn't think I am getting anywhere, the way he is smiling at me.

"MR. MILLER: Just a moment, if your Honor please, I object to that, and I assign Mr. Sheehy for misconduct, and I assign him for making a very vicious, scurrilous attack on Mr. Houtman sitting there, and bringing matters into this Court that are not evidence, and accusing my defendant of not being a gentleman in this court room—and he has been.

"THE COURT: Just a moment, now. We will straighten it all out. Ladies and gentlemen, you are to decide the case strictly on the evidence and the law to be given to you by the Court. You may sit down. (Addressing Mr. Miller.)

"MR. MILLER: I ask the Jury be instructed, and I ask for a mistrial right now, from that statement.

"THE COURT: Mr. Miller, that's silly of you to ask for a mistrial, and you know it is silly. Just, please, sit down.

"MR. MILLER: I don't think it's silly. I ask the Court to rule upon it.

"THE COURT: Well, I am denying you a mistrial.

"MR. MILLER: I make that in the utmost good faith.

"THE COURT: All right.

"MR. MILLER: Will the jury be admonished to disregard that remark?

"THE COURT: I have told the jury they are to decide the case strictly on the evidence—that is what they should decide —and the law."

We are unable to agree with appellant that any prejudicial error was committed. While the district attorney might well have omitted the reference to appellant smiling at him, it hardly called for the remarks made by counsel for appellant and certainly did not afford a reasonable basis for appellant's motion for a mistrial. While the court was perhaps a bit harsh in characterizing the motion for a mistrial as "silly" we do not believe that appellant suffered any prejudice therefrom.

Appellant's principal contention is that the court erred in giving the following three instructions to the jury:

"The evidence of the accomplice Ralph Woodey is not sufficiently corroborated if the testimony in this case merely connects the defendant John Houtman with Woodey by a physical association, and you cannot return a verdict of guilty upon this type of corroboration alone, *but this association must be considered by you with all the other evidence in the case.*"

"In determining whether the testimony of Woodey has been sufficiently corroborated so as to justify conviction of the defendant Houtman, then I instruct you that you cannot return a verdict upon the testimony of the witnesses Shockley and Strange standing alone as sufficient corroboration of the testimony of Woody. *However, you must consider the testimony of these two witnesses with all other evidence in the case in determining whether or not the witness Woodey has been corroborated.*"

"If you do not believe that defendant John Houtman executed the endorsement on People's Exhibit 1 which is the check involved herein, then you must find that the testimony of the witness Woodey has not been corroborated and return a verdict of not guilty. *However, in determining this question you must consider all of the evidence in the case.*"

The first part of each of these instructions was offered by appellant but the italicized part of each was added by the court.

Appellant contends most earnestly that the court by adding the italicized portions of the foregoing instructions stated to the jury that in determining whether the testimony of the accomplice Woodey had been sufficiently corroborated they must consider the testimony of the accomplice Woodey along with the other evidence in the case. Appellant argues that

by so instructing the jury the court disregarded the rule laid down in *People* v. *Reingold,* 87 Cal.App.2d 382, at page 393 [197 P.2d 175], as follows:

"We may, therefore, epitomize the requirements of section 1111 of the Penal Code by saying, first, that the corroboration is not sufficient if it *requires interpretation and direction* to be furnished by the accomplice's testimony to give it value; second, that the corroborative evidence to be sufficient and of the required *substantial* value *must tend directly and immediately* to connect the defendant with the offense charged against him; and, third, that the corroborative evidence is insufficient when it merely casts a grave suspicion upon the accused."

Appellant relies strongly on the very recent case of *People* v. *MacEwing,* 45 Cal.2d 218 [288 P.2d 257] (decided since the instant case was tried), in which the court said at page 225:

"Defendants also assign as error the trial court's action in adding a sentence to an instruction given at their request. The court instructed, first, 'The legal test you must apply in determining whether the testimony of Frawley was corroborated is to eliminate the testimony of Frawley and examine the other evidence to determine if such other evidence, standing alone and without support from the testimony of Frawley, fairly, logically, directly and immediately tends to connect the defendant with the commission of the alleged crimes.' The court then added: 'The corroborating evidence may take interpretation and direction from the testimony of Frawley to give it meaning and value.'

"The decisions applying section 1111, relating to accomplices, hold that the corroborative evidence required by that provision must be considered without the aid of the testimony which is to be corroborated and that it is not sufficient if it requires the interpretation and direction of such testimony in order to give it value. (*People* v. *Hoyt,* 20 Cal.2d 306, 312 [125 P.2d 29]; *People* v. *Shaw,* 17 Cal.2d 778, 805-806 [112 P.2d 241]; *People* v. *Rankin,* 10 Cal.2d 198, 201 [74 P.2d 71]; *People* v. *Davis,* 210 Cal. 540, 554-559 [293 P. 32]; *People* v. *Reingold,* 87 Cal.App.2d 382, 393, 408 [197 P.2d 175]; *People* v. *Garrison,* 80 Cal.App.2d 458, 461 [181 P.2d 738]; *People* v. *Sawaya,* 46 Cal.App.2d 466, 469 et seq. [115 P.2d 1001].) There are two opinions which, although not clear, indicate that a similar rule applies with respect to section 1108. (See *People* v. *Crain,* 102 Cal.App.2d 566,

579 [228 P.2d 307]; *People* v. *Murphy,* 60 Cal.App.2d 762, 772 [141 P.2d 755].) In our opinion both statutes must be construed to mean that corroboration is not adequate if it requires aid from the testimony of the person to be corroborated in order to connect the defendant with the commission of the offense charged. The instruction was therefore erroneous.

"The prosecution argues that the instruction as changed by the trial court can be justified upon the theory that the judge, having first instructed the jury to eliminate Mrs. Frawley's testimony in determining if there was other evidence tending to connect defendants with the crime, could properly tell the jury that if such corroborative evidence was found then in that event it might take interpretation and direction from the abortee's testimony. The sentence added by the court, however, is a direct, unqualified statement that the testimony of Mrs. Frawley could be used to interpret the corroborative evidence, and it would not convey to a jury the limited meaning urged by the prosecution."

Respondent in reply argues that the trial court did not err in instructing the jury that in passing upon the question of corroboration and sufficiency of the evidence the jury must consider all of the evidence in the case. In support of its contention respondent cites *People* v. *Griffin,* 98 Cal.App. 2d 1 [219 P.2d 519], decided by this court, as holding that all of the evidence in the case must be taken into consideration by the jury in determining whether or not the accomplice has been corroborated, and that includes circumstantial evidence and even the testimony of the defendant himself. While the case of *People* v. *Griffin* lays down complete and correct rules of law as to the degree of corroboration required there is nothing in that case which approves or justifies the giving of the three instructions hereinbefore set forth. For the language added by the court to the instructions offered by appellant in effect told the jury that in considering whether the accomplice Woodey had been corroborated they could consider the testimony of Woodey himself along with the other testimony. We believe that it was error for the court to add the italicized language in the instant case, just as the Supreme Court in *People* v. *MacEwing, supra,* held that it was error for the court to add the language: "The corroborating evidence may take interpretation and direction from the testimony of Frawley to give it meaning and value." For in *People* v. *MacEwing* the Supreme Court rejected the

argument that the instruction as changed could be justified upon the theory that the judge, having first instructed the jury to eliminate Mrs. Frawley's testimony in determining if there was other evidence tending to connect defendants with the crime, could properly tell the jury that if such corroborative evidence was found then in that event it might take interpretation and direction from the abortee's testimony. The Supreme Court said that the sentence added by the court was a direct, unqualified statement that the testimony of Mrs. Frawley could be used to interpret the corroborative evidence, and it would not convey to a jury the limited meaning urged by the prosecution.

We are, therefore, of the opinion that the court erred in adding the italicized portions of said instructions and that said error was sufficiently prejudicial to require a reversal of the judgment. The evidence against appellant was far from overwhelming. Without the testimony of the single handwriting expert who testified that appellant wrote the endorsement upon the check there was insufficient evidence to corroborate Woodey, and the record shows that one handwriting expert and two retired bank tellers testified that in their opinion appellant did not write the endorsement. The record shows further that the jury in the first trial was unable to agree and that the jury in the instant trial deliberated from 9:32 a. m. until 11:33 p. m. before bringing in a verdict of guilty. Under such circumstances we cannot hold that the error in giving said instructions did not result in a miscarriage of justice.

Numerous other contentions of error are made by appellant. We have considered them and do not believe that they have substantial merit. However, in view of our conclusion that the judgment and order must be reversed because of the errors hereinbefore set forth, we deem it unnecessary to discuss these additional contentions.

The judgment and the order are reversed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied January 24, 1956, and respondent's petition for a hearing by the Supreme Court was denied February 8, 1956. Traynor, J., was of the opinion that the petition should be granted.