[Crim. No. 2857.    Third Dist.    Sept. 16, 1958.]

THE PEOPLE, Respondent, v. JERRY D'ALLESANDRO et al., Defendants; JOE MIKE MANGIPANE, Appellant.

A. M. Frad for Appellant.

Edmund G. Brown, Attorney General, and G. A. Strader, Deputy Attorney General, for Respondent.

SCHOTTKY, J.—The above named defendant, Joe Mike Mangipane, was charged with violating section 182 of the Penal Code, in that he conspired with Jerry D'Allesandro and Edgar Kelley to violate section 548 of the Penal Code by wilfully secreting, destroying and disposing of a truck

with intent to defraud an insurer. He was also charged with violating section 548 of the Penal Code.

Defendant waived a jury trial, and the cause was tried before the court. The court found the defendant guilty, and probation was granted. Defendant's motion for a new trial was denied. This appeal is from the judgment and the order denying a new trial. No judgment was entered but since an order granting probation is an appealable order the appeal is proper both as to the order granting probation and the order denying the motion for a new trial.

The only question on this appeal is whether or not the testimony of an admitted accomplice was sufficiently corroborated as required by Penal Code, section 1111, which reads:

"A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

"An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the case in which the testimony of the accomplice is given."

The testimony produced at the trial disclosed that Jerry D'Allesandro was the owner of a 1954 Mac rebuilt Sterling Tractor Truck which was insured by Lloyds of London. A Joe Trombetta, an admitted accomplice, who was in the trucking business, testified that he had known appellant who had been doing some sub-hauling for him. In May, 1955, Trombetta and appellant had a conversation at which time appellant told Trombetta where there was a Diesel truck which "could be had." Trombetta indicated that he would be interested, and about a week later appellant and Trombetta had another conversation at which time Trombetta was told that the owner of the truck was D'Allesandro and that it could be arranged to have the truck parked at any place Trombetta desired. On a third occasion the matter was again discussed. At this time it was agreed where the truck would be parked and Trombetta was told that the truck would not cost him anything. Trombetta about this time also had a conversation with Edgar Kelley, a codefendant, who was an employee of his. Trombetta told Kelley that Mangipane had approached him about a truck being available and Kelley said, "let's get it." Later Kelley was told where the truck would be located,

and on June 24, 1956, after Trombetta was informed by appellant where the truck could be found in Los Angeles, Kelley and Trombetta drove to Los Angeles where they found D'Allesandro's truck at the agreed location. The name A. L. Clausen Trucking Company was on the decals on the door. The two purchased some paint, returned to the location where Kelley got into the truck and drove it away. Several miles away the truck was stopped and mudflaps attached to the rear. Kelley then drove the vehicle to Oklahoma. Later the truck was dismantled in Oklahoma by Kelley and Trombetta and most of the parts were taken back to California. The identification numbers on the engine block were changed.

D'Allesandro filed a claim for loss with the insurer and subsequently was paid.

The only corroborative evidence to link appellant with the crime, and the evidence relied on by respondent, was testimony given by Mrs. Helen Trombetta, wife of Joe Trombetta. She testified that after her husband was incarcerated in March, 1956, appellant phoned her. The testimony regarding this conversation was as follows:

"Q. What did he tell you at that time? Will you relate the conversation? A. The best I can remember the conversation was about Joe.

"Q. What did he say to you? A. He said—he asked me what was happening, where Joe was and when he was coming home.

"Q. And what did you tell him? A. I don't remember what I told him.

"Q. Did you tell him where your husband was? A. Yes, I told him he was still in jail.

"Q. And then what happened? A. He asked me if Joe had talked and I told him that I didn't know.

"Q. Then what happened? A. Well, he told me that there was no need for anyone else to be involved, that one was enough to take the responsibility of what had happened."

Mrs. Trombetta also testified as follows:

"A. Well, he did add that he would help the family, me and my family financially if Joe were gone and we needed more assistance."

Mrs. Trombetta had a later telephone conversation with the appellant and also talked with him in person. These conversations were related by the witness as follows:

"WITNESS: Well, the best I can remember, the last con-

versation I had on the telephone with him was that if I would meet him somewhere, he wanted to talk with me.

"Mr. Lacoste: Q. Did he tell you why he wanted to meet you somewhere? A. He didn't want to come to the house.

"Q. Did he tell you why? A. No, he didn't.

"Q. So then what happened? A. So I met him at the Modesto High School and I talked to him there.

"Q. Will you relate what was said at that time? A. He said he wanted to know what was taking place and what was said and what I knew.

"Q. What did you tell him? A. Whatever I knew that had taken place.

"Q. Do you recall what you told him? A. That Joe was still not at home and as far as I knew that nothing had happened, that they were not going to let him come home on bail and I didn't know what was going to happen and again he told me that there was no need for a lot of people to get involved, that one could take the responsibility and it would save dragging others into it.

. . . . . . . . . . . . . . . .

"A. He had told me that there was no need to drag anyone else into it and that if one was to take the blame, that there was no need to drag anyone else into it."

Appellant contends most earnestly that there is insufficient corroboration of the testimony of the accomplice Joe Trombetta and that therefore the judgment must be reversed. Respondent contends that the testimony of Mrs. Trombetta, hereinbefore set forth, is sufficient to corroborate the testimony of the accomplice.

There have been numerous decisions dealing with the question of the sufficiency of evidence to corroborate the testimony of an accomplice. However, recent decisions of our Supreme Court have stated the principles which we must follow.

■ In *People* v. *MacEwing*, 45 Cal.2d 218, the court said at page 225 [288 P.2d 257]:

"The decisions applying section 1111, relating to accomplices, hold that the corroborative evidence required by that provision must be considered without the aid of the testimony which is to be corroborated and that it is not sufficient if it requires the interpretation and direction of such testimony in order to give it value. [Citing cases.] There are two opinions which, although not clear, indicate that a similar rule applies with respect to section 1108. (See *People* v. *Crain*, 102 Cal.App.2d 566, 579 [228 P.2d 307]; *People* v.

*Murphy*, 60 Cal.App.2d 762, 772 [141 P.2d 755].) In our opinion both statutes must be construed to mean that corroboration is not adequate if it requires aid from the testimony of the person to be corroborated in order to connect the defendant with the commission of the offense charged. The instruction was therefore erroneous.''

In *People* v. *Brown*, 49 Cal.2d 577, at page 584 [320 P.2d 5], it is stated:

''The People rely also upon the testimony of Dr. Randall, who treated Clara on January 30, 1956, as corroboration. The doctor's testimony does not meet the test of connecting defendant with the abortion which Clara underwent. *People* v. *Ramsey* (1948), 83 Cal.App.2d 707, 717 [4] [189 P.2d 802], is inconsistent with *People* v. *MacEwing* (1955), *supra*, 45 Cal. 2d 218, 225 [7], insofar as it suggests that testimony which does not itself connect the defendant with the criminal abortion is sufficient corroboration; in this respect the Ramsey case does not represent the law and, to avoid possible confusion, is to that extent disapproved.''

In *People* v. *Lyons*, 50 Cal.2d 245 [324 P.2d 556], at page 257, the court said:

''The evidence need not corroborate the accomplice as to every fact to which he testifies but is sufficient if it does not require interpretation and direction from the testimony of the accomplice yet tends to connect the defendant with the commission of the offense in such a way as reasonably may satisfy a jury that the accomplice is telling the truth; it must tend to implicate the defendant and therefore must relate to some act or fact which is an element of the crime but it is not necessary that the corroborative evidence be sufficient in itself to establish every element of the offense charged. [Citing cases.]''

In *People* v. *Santo*, 43 Cal.2d 319, the court said, at page 327 [273 P.2d 249]:

''The accomplice need not be corroborated as to every fact to which he testifies. The evidence which corroborates the accomplice need not be direct; it may be circumstantial. Although the corroborating evidence must do more than raise a conjecture or suspicion of guilt, it is sufficient if it tends in some degree to implicate the defendant. (*People* v. *Henderson* (1949), 34 Cal.2d 340, 342-343 [209 P.2d 785]; *People* v. *Barclay* (1953), *supra*, 40 Cal.2d 146, 156 [252 P.2d 321]; *People* v. *Wayne* (1953), 41 Cal.2d 814, 822 [264 P.2d 547].) To be sufficient the implicating evidence 'must relate to some

act or fact which is an element of the offense.' (*People* v. *Gallardo* (1953), 41 Cal.2d 57, 63 [257 P.2d 29].)''

█ Applying the foregoing principles to the instant case we are of the opinion that the testimony of Mrs. Trombetta, relied on by respondent, is insufficient corroboration of the accomplice, Joe Trombetta. Section 1111 of the Penal Code states that ''a conviction can not be had unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense,'' and our Supreme Court has stated in *People* v. *MacEwing, supra*, that ''corroboration is not adequate if it requires aid from the testimony of the person to be corroborated in order to connect the defendant with the commission of the offense charged.''

There is nothing in Mrs. Trombetta's testimony which, when considered without the aid of the testimony of the accomplice, can be held to connect appellant with the offenses with which he was charged.

Mrs. Trombetta states twice in her testimony that the conversations with the appellant were about Joe, her husband. One may speculate as to why appellant asked Mrs. Trombetta if her husband had talked and that he should not involve others, but such statements do not show even the slightest connection with the taking of a truck some 300 miles distant some nine months before. Mr. Trombetta testified to a many-year acquaintance with appellant which at times involved daily meetings of each other. There is nothing in the record to indicate but that appellant and Trombetta were friends. Thus, the advice and help which appellant offered to Mrs. Trombetta were entirely consistent with their long-time family acquaintance and the obvious distressing situation in which Mrs. Trombetta and family were placed by the jailing of her husband.

Respondent does not point out how the testimony of Mrs. Trombetta meets the test set forth in *People* v. *MacEwing, supra*, and the other cases hereinbefore cited, but respondent seems to rely strongly on *People* v. *Andrew*, 43 Cal.App.2d 126 [110 P.2d 459]. Respondent states that in that case the evidence was sufficient to corroborate the testimony of the accomplice where such corroborating evidence consisted of testimony to the effect that the defendant attempted to visit the accomplice after the latter had been arrested and was in jail, but upon being refused permission to see the accomplice wrote to him three different times as follows:

"(1) 'Roy Jones . . . Can't see you. They won't let me. Please don't testify against me.' (2) 'Ask if you can receive any books or magazines. Anything you wish will be sent. . . . Regardless of what the law does or tries to do it cannot break down those sincere friendships of which there are so few. One who does not stick by his friend in time of trouble is not worthy of the name. Just remember that. . . . When and if you are released and you wish to make a trip and are allowed to, a ticket will be provided by the company, to any point in the U. S. you wish to go. So don't worry about your condition when you get out. . . . A new and different venture will be invested in soon and part or all of the profits will be yours, so that you will be self maintaining when you are free.' (3) 'It won't be so very long now and probably you will be out. It would be nice to take a vacation somewhere when you do, mountains or something, and you can if you want to.' ''

Respondent also quotes the following from page 129 of *People* v. *Andrew*:

". . . The rule as to what extent corroboration is necessary to connect or tend to connect a defendant with the commission of a crime appears in the case of *People* v. *Negra*, 208 Cal. 64, 69 [280 P. 354], where the court states: 'The evidence tending to connect a defendant with the commission of the crime may be slight and, when standing by itself, entitled to but little consideration. . . . The law does not require that the evidence necessary to corroborate the testimony of an accomplice shall tend to establish the precise facts testified to by the accomplice; and strong corroborative testimony is not necessary to support a judgment of conviction founded on the testimony of an accomplice. Even though circumstantial and slight, the evidence is, nevertheless, sufficient if it tends to connect the accused with the commission of the offense.' ''

We are unable to agree with respondent's statement that "on the authority of the Andrew case it should be held that the testimony of the accomplice Joe Trombetta is sufficiently corroborated." For in the Andrew case the corroborating evidence was far stronger than the testimony of Mrs. Trombetta in the instant case. Appellant Andrew was charged with having committed an act of sexual degeneracy with Roy Jones. Andrew wrote Jones, who was in jail, stating among other things, "Please don't testify against me," and made a number of promises as to benefits he would confer upon Jones. The words "Please don't testify against me" point at no one but the writer of the letter. There is no doubt as to

who is meant by "me." The words "testify against" clearly imply that there was something which the accomplice could testify to, which would be against the writer and connect the writer to both the accomplice and the testimony he might give against the writer.

As hereinbefore pointed out, the statements of appellant in his conversation with Mrs. Trombetta were far different. Furthermore, in the Andrew case there was additional corroborating evidence as the opinion states that "Appellant while testifying in his own behalf made inconsistent statements and many replies to questions propounded to him, that are not consistent with his innocence."

We believe that the decision in *People* v. *Andrew, supra,* is distinguishable from the instant case and neither justifies nor requires us to hold that the testimony of the accomplice Trombetta was sufficiently corroborated. We believe further that if *People* v. *Andrew* is susceptible of the construction placed upon it by respondent it is out of harmony with the later cases of our Supreme Court hereinbefore cited. It is to be noted that no hearing in the Supreme Court was sought in *People* v. *Andrew* and that the decision has not been referred to or cited in the later cases.

For the reasons hereinbefore set forth we conclude that the testimony of Mrs. Trombetta was insufficient to corroborate the testimony of the accomplice, Joe Trombetta, and that inasmuch as it is conceded that there was no other corroborating testimony, the judgment must be reversed.

The judgment and the order are reversed.

Van Dyke, P. J., and Warne, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.