[Crim. No. 3451. Third Dist. Oct. 24, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. RICHARD LEE ROSE, Defendant and Appellant.

Robert J. Rishwain, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Plaintiff and Respondent.

PIERCE, P. J.—Defendant was convicted of violation of Penal Code section 470 (forgery). He appeals contending principally that (1) there was no corroboration to the testimony of his accomplice and therefore insufficient evidence to support the conviction; and (2) that evidence of his own extra-judicial statement received in evidence as an admission was inadmissible hearsay. Both contentions are unsound.

 Defendant and Alice, the latter a 17-year old, en route from Oregon to Nevada for the purpose of obtaining migratory divorces from their respective spouses, decided to defray part of their expenses by passing forged checks. Reaching Shasta County, California, they looked up names in the telephone book and after making name selections phoned the Bank of America at Redding to ascertain whether there were checking accounts in such names. They obtained from an undisclosed source a supply of blank checks issued by the bank and a number of fictitious checks were drawn by defendant. One of them, dated December 28, 1962, bore the purported signature of Norman T. Woolf, a Redding physician. It was made payable to ''Anita Abreu.'' This was the maiden name of defendant's about-to-be divorced wife. Defendant had obtained his wife's social security card and her driver's license. These were furnished to his companion Alice to use for identification. Fifty dollars was the amount of the check. It was cashed by Alice at the Farmer's Market located at Anderson, Shasta County.

The next day the couple crowded their luck; they tried to cash at the same market another forged check bearing the same names as maker and payee respectively. This check was also written by defendant. Alice attempted to cash it while defendant stood by the meat case of the market. The attempt was a mistake. Employees of the market had been in touch with Doctor Woolf and had learned the first check was forged. The clerk to whom the second check was presented did not immediately apprehend the pair but he did refuse to cash the check and the police were notified.

Alice left the market and defendant was seen joining her. The two walked to a beauty salon nearby and Alice walked in. When they left later they were stopped by police officers and questioned. Defendant falsely identified himself as ''Torry Davis from Wichita, Kansas.'' At the police station employees of the store identified Alice as the person who cashed the checks and defendant as her companion. The social security card of Anita Abreu was discovered in Alice's

purse. Defendant stated to Alice: "If you are in some type of trouble, or if you are in any trouble or have done anything wrong, don't worry. I will stick by you." Thereafter Alice admitted, first out of the presence of defendant and later in his presence, that she had cashed a number of forged checks which defendant had written. She said she had done this because defendant had threatened her 9-months-old baby. A police officer then asked defendant if Alice's story was true. Defendant shrugged his shoulders and stated, "More or less." The statements of both were voluntary and it is not contended otherwise.

An officer also testified that at another time when defendant was being questioned he stated something to the effect that Alice was "stupid and she would do anything, and that he didn't feel that she ought to go to jail for this as it wasn't her fault that she had cashed these checks." This officer also testified: "he [i.e., the defendant] stated, I believe he stated he had written the checks and that she had passed the checks."

Defendant also remarked to Alice in the presence of the police officers: "You remember on our way out here when I would go into these stores, I would stop and go into the market and get some milk or some other items?" and when Alice answered "Yes" defendant had added: "I was passing checks there."

Regarding defendant's contention that there was no corroboration of Alice's story, while it is true that much of what has been related above was obtained by the police from Alice who also testified at the trial, it is also true that she accused him in his presence and his reaction was a shrug of the shoulders and an admission that her accusation was "more or less" correct.

There were also the other actual and equivocal admissions noted above. The activities of the couple related by the store employees and by the police officers gave circumstantial corroboration to the accomplice's testimony. Defendant took the stand and, it may be added, his denial of complicity cannot be reconciled with the officers' testimony.

■ Testimony of an accomplice must be corroborated (Pen. Code, § 1111), but corroborating evidence is sufficient if it tends to connect defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the witness who must be corroborated is telling the truth. (*People* v. *MacEwing*, 45 Cal.2d 218, 224 [288 P.2d 257].)

Here the jury *was* satisfied and its satisfaction was reasonable.

 Defendant contends his statement to the police officers after having heard Alice's story and after being questioned as to its accuracy, that it was correct "more or less" was inadmissible hearsay. It was not. Defendant was not verifying what he had heard but what he knew because he had either seen or participated in the events. Even had he merely confirmed what Alice had told him dehors his own experience it would have been admissible. (*Kerr* v. *Milatovich*, 209 Cal. 765 [290 P. 289].)

Other contentions lack sufficient merit to require discussion.

Judgment is affirmed.

Schottky, J., and Friedman, J., concurred.