[Crim. No. 5754. Second Dist., Div. Three. Nov. 8, 1957.]

THE PEOPLE, Respondent, v. BRUCE ALEXANDER MacEWING et al., Appellants.

118

120

Ball, Hunt & Hart, Joseph A. Ball, Clark Heggeness, William T. Pillsbury and William L. Graves for Appellants.

Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, William B. McKesson, District Attorney (Los Angeles), and Thomas W. Cochran, Deputy District Attorney, for Respondent.

SHINN, P. J.—Bruce A. MacEwing and Sam E. Hewett were accused by information in Count I of conspiracy to commit abortion and in Count II with abortion. Trial was to a jury, which found them guilty as charged. On an appeal taken by defendants the judgments were reversed. (*People* v. *MacEwing*, 45 Cal.2d 218 [288 P.2d 257].) At the retrial, which was also to a jury, MacEwing was convicted on both counts and Hewett was found guilty of conspiracy but not guilty of abortion. Defendants' motions for a new trial were denied; Hewett was placed on probation and MacEwing was sentenced to state prison. Defendants appeal from the judgments (Pen. Code, § 1237), and the denial of their motions for a new trial.

Mrs. Frawley, the complaining witness, testified that in April, 1953 she had had sexual intercourse with defendant Hewett, who was her coworker at the Douglas Aircraft plant

in Long Beach. She subsequently consulted a Dr. Johnson and was told that she was pregnant. She informed Hewett of her condition and asked if he could help her. Hewett told her that defendant MacEwing (a licensed physician and surgeon) had performed an abortion on his sister and that he would make the arrangements with him. The next day Hewett told Mrs. Frawley that he had talked with the doctor, and gave her a handprinted card containing MacEwing's name, address and telephone number. The card was received in evidence. On August 17th Mrs. Frawley visited the doctor's office, where she was examined and was told that the price would be $400; she returned on August 20th and paid the $400 to a nurse. MacEwing then performed the abortion. The next day Mrs. Frawley talked to the doctor on the telephone and he asked her if she had miscarried; on learning that she had not, he said that he would see her on the 24th. On that date she went to MacEwing's office and was given several hypodermic injections to bring on cramps. She left by taxi and late that evening she had a miscarriage. On August 30th she called Dr. Johnson, who sent her to a hospital where she remained for several days. She described in detail the offices occupied by MacEwing and the jury was taken to view the premises.

Dr. Bernard Johnson testified that on June 26th he told Mrs. Frawley she was pregnant. He saw her on the night of August 24th; she was in severe pain and told him that she had had an abortion and he examined the fetus she had expelled. A week later she had a fever and a pelvic infection which he believed was due to an abortion. He sent her to a hospital. He testified that he could find no indication that an abortion was necessary to save her life. Mrs. Frawley's mother testified that on the night of August 24th her daughter was very sick and that she witnessed the miscarriage.

Matt Anderson, a cab driver, testified that on August 24th he received an order to go to MacEwing's office and pick up a passenger; he stated that Mrs. Frawley came out of the doctor's office looking very pale, disheveled and nervous and that he took her to an address she gave him.

On October 1, 1953, after the preliminary hearing, MacEwing was observed by George Franco, a security officer at the Douglas plant, getting out of a car on the parking lot. Dr. MacEwing was holding some handbills. When asked for identification he said his name was Case, that he worked for Rheems Manufacturing Company, that he had been at a union

meeting and was trying to make a few dollars passing the handbills. One of the handbills was received in evidence. It read: "Union Civic & Morals Committee. Union Workers. This is where your funds go!! Douglas Worker, Gertrud Frawley . . . Admitted Abortion!! She figures to apply for insurance to pay. We protest! Signed—Painters dept. 559. Long Beach Douglas Plant. Swing Shift." Oval Pierce, president of the union local at the plant, testified that the handbills were not authorized by the union and that the union did not have a civic and morals committee.

When Hewett was arrested he admitted to officers that he knew Mrs. Frawley and when asked by the officers whether he had made any arrangements for her regarding an abortion, he said that she had talked to him about her pregnancy and he had told her he would see if he could do something about it. He said that he knew MacEwing and that he and his brother had painted the doctor's offices several years previously. He said he had telephoned MacEwing's office but had not talked to the doctor; he told a woman at the office that he was trying to get help for a pregnant girl who wanted to get rid of her baby; the woman at the office told him that it couldn't be done. When MacEwing was arrested he denied knowing Mrs. Frawley. Neither defendant testified.

The first assignment of error on behalf of Hewett is that the court erred in receiving in evidence the conversation between Hewett and the arresting officer. It is argued in this connection that Hewett's extrajudicial statements were not to be interpreted as an admission of wrongdoing, hence the officer's testimony was hearsay and should have been excluded. The argument is without merit. ██ Evidence may be given of the acts, declarations and omissions of a party. (Code Civ. Proc., § 1870; Pen. Code, § 1102.) ██ Hewett told the officer that he knew MacEwing and had asked someone in MacEwing's office if an abortion could be arranged. His statements were relevant. They were an admission that he was ready and willing to make an arrangement with Mac-Ewing for an abortion and were logically related to the existence of a conspiracy. The officer's testimony was therefore properly received as an admission. (19 Cal.Jur.2d 133-36; *People* v. *Cavanaugh*, 44 Cal.2d 252, 266 [282 P.2d 53].)

The next assignment of error to be considered is the contention of Hewett that the evidence tending to implicate him was legally insufficient as corroboration of the testimony of Mrs. Frawley. (Pen. Code, § 1108.)

The rules governing the sufficiency of corroborating evidence were stated in the opinion of the Supreme Court on the prior appeal. Corroborating evidence is sufficient if it tends to connect the accused with the commission of the crime in such a way as may reasonably satisfy the jury that the witness who must be corroborated is telling the truth; it must be considered without the aid of the testimony which is to be corroborated, and is insufficient if it requires the interpretation and direction of such testimony in order to give it value. (*People* v. *MacEwing, supra,* 45 Cal.2d 218, 224-5, and cases cited.)

 Corroborating evidence need not be direct but may be circumstantial. It need not extend to all the elements of the offense, nor to every detail included in the testimony of the witness to be corroborated, and it has been held that it is sufficient if it tends, in some slight degree, to implicate the accused. (*People* v. *Griffin,* 98 Cal.App.2d 1, 24-25 [219 P.2d 519], and cases cited.) The weight of the corroborating evidence is a question of fact for the jury to determine. (*People* v. *Trujillo,* 32 Cal.2d 105, 112 [194 P.2d 681].)

 The admissions of Hewett were sufficient as evidence that he was willing and endeavored to arrange with MacEwing for the performance of an abortion. It could have been inferred from evidence, other than the testimony of Mrs. Frawley, that she did not know Dr. MacEwing, or, at least, that Hewett believed them to be unacquainted, since he endeavored to contact the doctor for her. There was evidence other than that of Mrs. Frawley that she did go to the doctor's office; and it was a fair inference that she went to see him at the suggestion of Hewett. Although there was no direct evidence of any communication between Hewett and the doctor it was significant that instead of giving up the idea of enlisting the services of the doctor, after learning of Hewett's unsuccessful request by telephone (assuming the truth of his admissions), Mrs. Frawley visited the doctor. And it is scarcely conceivable that Mrs. Frawley would have failed to inform the doctor that she had come to him at the suggestion of Hewett. In the usual course of events the woman who had received the telephone call of Hewett would have made a report of it to the doctor. When it is considered that Hewett felt some responsibility to render assistance to Mrs. Frawley, and that but for his advice and efforts she would not have gone to the doctor, who was a stranger to her, it was not an unreasonable inference that Hewett had contacted the doctor, disclosed to

him the purpose he and Mrs. Frawley had in mind, and obtained his consent to perform the operation. We deem the corroborative evidence sufficient as to Hewett.

We are also of the opinion that there was sufficient corroboration of Mrs. Frawley's testimony with respect to the case against MacEwing. ▇ There are two phases of the problem where corroboration is required. The first is the question whether the evidence elicited from the corroborator, considered entirely apart from that of the corroboratee,[1] fairly, reasonably and logically tends to connect the defendant with the commission of the offense. This may be referred to as the initial test; if the evidence falls short of its objective it is to be disregarded, and the attempted corroboration fails. No question remains as to the credibility of the corroboratee or the truth of her testimony.

Counsel for MacEwing correctly say: "The law of the case required the lower court to instruct the jury that they were to assume that Frawley's evidence was removed from the case and that they were to then examine all other evidence in the case and determine if it clearly and logically permitted the jury to infer that the defendant was connected with the offense charged (*People* v. *MacEwing, supra,* 45 Cal.2d 218)."

▇ At the request of MacEwing the court gave such an instruction as follows: "In determining whether or not the testimony of the witness Frawley has been corroborated as required by law, you must for the purpose only of deciding the special issue of corroboration as required by section 1108 of the Penal Code, assume to be removed from the case, all of the testimony of the witness Frawley and then examine all other evidence with the view of determining if that evidence tends to connect the defendant with an offense charged in the information. If such other evidence does in and of itself and without the aid of Frawley's testimony tend to connect the defendant with the commission of an offense alleged in the information, then the testimony of the witness Frawley would be corroborated; if such other evidence does not in and of itself tend to connect the defendant with the commission of an offense alleged in the information, there is no corroboration although the witness Frawley may be corroborated in regard to any number of facts sworn to by her."

[1]For reasons we believe are obvious, instead of referring to Mrs. Frawley as "the person to be corroborated" or "the witness whose testimony required corroboration" etc., we shall designate her as the "corroboratee."

■ We shall first consider MacEwing's contention that as a matter of law the evidence failed to meet the above test in that it did not tend reasonably to prove his connection with the commission of the offense.

The testimony of Dr. Johnson and that of Mrs. Frawley's mother was sufficient to prove that Mrs. Frawley had suffered a miscarriage and that it was due to her having submitted to an abortion. The testimony of Matt Anderson, the cab driver, was sufficient to prove that Mrs. Frawley came out of MacEwing's office and entered his cab looking pale, disheveled, in a hurry and very nervous, which indicated that she had just gone through an ordeal of some sort. Suzanne Lee Perry, a witness for the People, testified that she went to work for Dr. MacEwing in May as an office assistant but gave injections to patients under his direction; Mrs. Walling, another nurse, was on vacation during the month of August and there were then in the clinic only Miss Hobson and Dr. MacEwing. Katherine Lee Hobson, a witness for the People, testified that she went to work for Dr. MacEwing in June as a bookkeeper and receptionist. She testified that another doctor, Wade Walker, has been "there" ever since she had been employed in Dr. MacEwing's office. She was not questioned whether he was present when Mrs. Frawley was seen leaving the office. At the time of Dr. MacEwing's arrest he was informed as to the identity of the complaining witness and he denied to the officer knowing Mrs. Frawley or ever having seen her. There was also testimony as to an occurrence of minor significance, namely, that Dr. MacEwing was found on the premises of Douglas Aircraft in the possession of the handbills we have previously mentioned and that he gave the officer who questioned him a fictitious name and an untrue account of his activities.

It is earnestly insisted that this was insufficient evidence to prove MacEwing's connection with the offense charged. Each item of evidence is discussed as insufficient in itself to establish such a connection. The incidents were not to be considered one by one, but each with respect to its relation to the others. It is suggested that the fact that Mrs. Frawley emerged from the offices no more indicated that she was a patient of Dr. MacEwing than that she was Dr. Walker's patient; however, the fact that she was leaving the office in a distraught condition placed Dr. MacEwing under suspicion with relation to this precise point. We think the jury had a right to consider his failure to testify as a circumstance tending to prove that

Mrs. Frawley was not Walker's patient, since if she had been a patient of Dr. Walker, MacEwing would have known it, and it would have been within his power to testify to the fact in order to free himself from responsibility for her presence in the office. We do not doubt that from the foregoing evidence the jury could reasonably have concluded that Mrs. Frawley was Dr. MacEwing's patient on August 24th, and that the operation was performed in his office; and we must assume that in reaching this conclusion the jury, in obedience to the instructions, gave no consideration to the testimony of Mrs. Frawley. It follows that the evidence was sufficient to prove MacEwing's connection with the offense. This, however, is not the ultimate test.

The second phase of the problem arises if and when the jury has concluded, in accordance with the foregoing formula, that the corroborative evidence reasonably tends to connect the defendant with the commission of the offense.

Under well-settled rules, reaffirmed by the Supreme Court on the former appeal, the evidence necessary to establish corroboration must go beyond a mere showing of a connection of the accused with the commission of the offense. It must be sufficient of itself, to satisfy the jury that the corroboratee has told the truth. The instruction we have quoted ignored this requirement and stated an incomplete and erroneous test. It is, of course, a requirement that is of advantage to the accused, since it calls for a more rigorous test. In this inquiry it becomes necessary for the jury to compare the corroborative evidence with the testimony of the corroboratee, since it is by such comparison that the sufficiency of the independent evidence to prove the credibility and the truthfulness of the testimony of the latter is to be determined. If the corroborative evidence dovetails with and strengthens that of the corroboratee, in whole or in material part, with respect to one or more of the elements of the offense, so as to reasonably convince the jury that the corroboratee has testified to the truth, credibility is established, and the corroboration is sufficient to allow reliance upon the testimony of the corroboratee in its entirety. It then stands on the same footing as testimony that does not require corroboration.

At the request of the People the court instructed as follows: "You are instructed that the corroborating evidence legally necessary to sustain a conviction of either the crime of conspiracy to commit abortion as charged in Count I of the information or the crime of abortion as charged in

Count II, is sufficient if it tends to connect a defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the witness who must be corroborated—Gertraut Frawley—is telling the truth.''

It is contended that it was error to give the instruction, although it states the test approved by the Supreme Court on the prior appeal. According to the argument the instruction permitted the jury to consider the testimony of Frawley in determining whether the corroborative evidence tended to connect a defendant with the commission of the offense in such a manner as to convince the jury that she was telling the truth. If this had been the only instruction with respect to the corroborative evidence it might have been understood by the jury as counsel for MacEwing understand it. It does not state that in comparing the corroborative testimony with that of the corroboratee the former must be accorded no weight derived from the latter. No doubt a specific instruction to that effect would have been given if it had been requested by the defendants, but such a request was not made.

Counsel for MacEwing do not question that the corroboration must be sufficient to convince the jury that the corroboratee has told the truth. They contend that the statement respecting the truthfulness of the testimony of the corroboratee ignores the quantum of proof that is required and reduces the inquiry to the sole question of the credibility of the corroboratee. It is an unavailing and untenable objection. Of course, credibility must be established. By corroboration the witness gains credibility and the testimony affected gains weight. Credibility is of the very essence of corroboration.

If the instruction had permitted the jury to consider the testimony of the corroboratee with that of the corroborator in determining whether the testimony of the latter was sufficient to prove a defendant's connection with the offense it would have been in direct conflict with the first instruction, which stated the correct rule. Such is not the case. The first instruction stated that in determining whether the evidence tended to connect a defendant with the offense, the testimony of Frawley should be deemed removed from the case, and since under the second instruction the jury was required to ascertain whether the corroborative evidence was sufficient ''to connect a defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the witness—Gertraut Frawley—is telling the truth,'' there was no misdirection of the jury. If the jury obeyed the instruc-

tion to lay aside Mrs. Frawley's testimony in weighing the testimony of other witnesses, the second instruction did not mislead them. The two instructions were conflicting in the delineation of the sufficiency of the corroborative evidence and the first one was erroneous as well, but of this MacEwing does not and could not complain. They were not conflicting as to the manner in which the corroborative evidence was to be weighed. As previously stated, it was to the advantage of the defendants that the jury be instructed as to the test stated in the second instruction.

We are not by any means expressing approval of the manner in which the jury was instructed on the rules pertaining to corroboration. Certainly a single instruction could have been framed that would have stated the entire rule simply and adequately. The court gave 15 instructions on that subject. Among them were instructions that ''slight'' evidence, or evidence which tended in a ''slight degree'' to connect the accused with the commission of the offense, would be sufficient. These are words of vague meaning. They could mean many things to many people. The Supreme Court stated a test on the former appeal that is complete and easily understood. It should take the place of other tests. It is absurd to state that test and also to instruct that slight evidence may be sufficient. Slight evidence could be a very minimum of evidence, and not at all convincing. It is a rule of law that slight evidence may be sufficient to support a verdict which depended upon the sufficiency of the corroborative evidence, but it can furnish no guide to jurors in their endeavors to determine whether the evidence is satisfying or convincing to them. There was no error in giving the second instruction.

We are impressed by the fact that the matter of instructions on corroboration is in need of reexamination and revision. Although we are of the opinion that the jury was not as well instructed as it should have been, and in some respects erroneously instructed, we would be at a loss to discover any prejudice to the defendant. MacEwing's complaint of the second instruction to the effect that it permitted the jury to improperly add the weight of Mrs. Frawley's testimony to that of the other witnesses falls short of any showing of prejudice. The other witnesses were Dr. Johnson, Mrs. Frawley's mother and Anderson, the cab driver. There could have been no good reason for doubting the truth of their testimony or for believing it only because it coincided with the testimony of Mrs. Frawley.

MacEwing does not contend that the testimony of Mrs. Frawley, if legally corroborated, was insufficient to justify the verdict.

■ The next point raised by MacEwing is that the court committed prejudicial error in refusing to give his requested instruction reading: "If the corroborating evidence, if any, is susceptible of two constructions or interpretations, each of which appears to you to be reasonable and one of which points to the guilt of defendant and the other to his innocence, you are required under the law to adopt that interpretation which will admit to the defendant's innocence and reject that which points to his guilt."

The instruction was properly refused. As we have stated, the first inquiry is whether the corroborative evidence tends logically to prove the defendant's connection with the offense. If it does, the inquiry goes further. There is no requirement that, considered by itself, it must be inconsistent with innocence. It might be sufficient as tending to show a connection with the commission of the offense and yet be consistent with innocence. It is by no means the determining factor as between guilt and innocence. It is to be weighed for a single purpose and when it accomplishes that purpose, it is to be considered with other evidence on the issue of guilt or innocence.

The rule as to equally reasonable theories is applicable to the entire direct evidence, not to each part separately. Under the rule contended for by MacEwing the judgment could not stand if the testimony of the independent witnesses was as consistent with innocence as with guilt, even though it logically tended to prove his connection with the offense and when considered with the other evidence was sufficient to establish guilt. Such a rule would be an innovation in the law of corroboration.

The court instructed as follows: "If the evidence in this case (as to any particular count) is susceptible of two constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of a defendant, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which will admit of the defendant's innocence, and reject that which points to his guilt. You will notice that this rule applies only when both of the two possible opposing conclusions appear to you to be reasonable. If on the other hand, one of the possible conclusions should appear to you to be reasonable and the other

to be unreasonable, it would be your duty to adhere to the reasonable deduction and to reject the unreasonable, bearing in mind, however, that even if the reasonable deduction points to defendant's guilt, the entire proof must carry the convincing force required by law to support a verdict of guilt.'' This was a correct and sufficient statement of the rule applicable to opposing reasonable interpretations of the evidence.

On behalf of MacEwing it is contended that the court committed error in giving two instructions each of which related to accusatory statements. One of them stated in part ''The reaction of a defendant to an accusatory statement may in itself, furnish corroboration.'' The other stated that the failure to reply to an accusatory statement or the making of false, evasive or contradictory statements may be considered as indicating an admission that the accusation was true, and that while such statements would not be sufficient to prove guilt they were to be considered as a circumstance tending to prove a consciousness of guilt. There were no accusatory statements made to MacEwing and there was no occasion for instructions on the subject. They should not have been given. The officer who arrested MacEwing testified that he told MacEwing what he was being arrested for, told him that Mrs. Frawley was making the accusations, and that MacEwing replied that he had never seen her nor heard her name mentioned.

The statement ''The reaction of a defendant to an accusatory statement may in itself, furnish corroboration'' was clearly erroneous. The question of the legal sufficiency of the corroborative evidence is one of law. The statement has no place in an instruction. It is vague and meaningless. It sets up no standard and supplies no test, but suggests that there is a test of some sort and leaves it to the jury to determine what it is. The statement also carried an implication that there was evidence of some reaction of MacEwing to an accusatory statement that might be deemed sufficient as corroboration. It was for the jury to determine, if that was possible, what reaction the court had in mind, for a so-called ''reaction'' might be anything from a confession to a positive denial of guilt. The implication was not removed by the additional admonition that the ''reaction mentioned should be disregarded unless the accused made some statement that indicated an admission that the accusatory statement was true.'' The court was still speaking of a ''reaction'' that did

not exist. It is contended that inasmuch as there was no evidence of MacEwing's conduct or statements other than his voluntary statement that he did not know Mrs. Frawley, the instruction erroneously suggested that if the jury believed he did know her, his denial that he knew her could be regarded as an indication of a consciousness of guilt. We doubt that the instruction would have been so understood. Notwithstanding the possible implication of the erroneous instructions, we do not believe the jury could have regarded MacEwing's denial that he knew Mrs. Frawley as indicating a consciousness of guilt, or an admission of an incriminating fact. The error was not prejudicial.

The judgments as to both defendants and the orders denying their motions for a new trial are affirmed.

Wood (Parker), J., and Vallée, J., concurred.

Appellants' petitions for a hearing by the Supreme Court were denied December 30, 1957. Carter, J., and Schauer, J., were of the opinion that the petitions should be granted.