[Crim. No. 5997.   Second Dist., Div. Three.   Feb. 28, 1958.]

THE PEOPLE, Respondent, v. NEIL ESTES SCOTT, Appellant.

James Crehan and F. Walter French for Appellant.

Edmund G. Brown, Attorney General, and Lynn Henry Johnson, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendant was accused, in six counts, of robbery. A jury could not agree upon a verdict and a mistrial was declared. Another jury trial was had as to Counts II and III only. Defendant was found guilty on both counts. He appeals from the judgment and the order denying his motion for a new trial.

Appellant contends that the testimony of the accomplice Olsen was not corroborated.

In Count II defendant was accused of robbery of Mr. Langan on November 22, 1956. In Count III he was accused of robbery of Mr. Ranger on December 14, 1956.

Mr. Langan testified as follows: On said November 22, about 1:30 a. m., he was the bartender at Ted's Grill in Santa Monica Canyon. At that time defendant entered the place, sat on a stool at the bar, and ordered beer. Four patrons were at a table. Mildred Butler, a waitress, was also in the room. About five minutes after defendant entered the room, Roy Olsen entered, sat next to defendant, and ordered beer. No greeting was exchanged between defendant and Olsen. After beer had been served to Olsen, the defendant asked Langan how far it was to Pasadena. As Langan was about to reply, Olsen interrupted and told defendant that it was about 20 miles. Defendant said he was going there, to a friend's or

relative's place, for dinner that day (which was Thanksgiving Day). Olsen said that he was going that way and if defendant would follow him, he would show defendant the way to Pasadena. Defendant ordered another beer and Langan told him that he had a short time in which to drink it. Then Langan told the patrons that he was making the last call (before closing the bar) and that it was time to leave. The four persons at the table started to leave. Defendant and Olsen also started to leave. All the persons went out practically at the same time—more or less in a bunch—the four persons were in front and defendant went ahead of Olsen. About 30 seconds after all of them had gone out the door, Olsen was standing in front of Langan, holding a gun (automatic pistol, Exhibit 1), and Olsen said, "This is it. Put your money on the bar." Langan opened the register and put the money on the bar. Olsen put the money in his pocket and as he went to the door he said that his wife was in a hospital and she could use the money.

Mildred Butler, the waitress, testified that defendant entered the grill about 1:15 a. m. and sat at the bar. About five minutes later Olsen entered and sat next to defendant. No greeting was exchanged between them. They were sitting near the place where she was standing. Defendant asked the bartender how far it was to Pasadena. As the bartender started to answer, Olsen said it was about 20 miles. Defendant said he was going there to his aunt's for Thanksgiving dinner. Olsen said he was going to Pasadena and that defendant could follow him if he could keep up with Olsen's 1952 Lincoln Capri car. Defendant said that he had his 1946 (or 1948) Ford overhauled and had new tires on it and it rolls right along. About 1:45 a. m. the bartender gave the last call (before closing the bar). Then defendant said he wanted another beer, and the bartender told him that he only had 15 minutes in which to drink it. At closing time, 2 a. m., the bartender said that he would have to have defendant's glass. The bartender announced that the patrons would have to leave. Then the four persons who were at the table went to the door, and defendant and Olsen followed them. She (waitress) followed all of them to the door, intending to close the door. After the persons had gone out, she noticed that the door had not closed but was still open about six inches. Olsen was the last person who went out the door. When she reached to close the door she noticed that a person's foot was in the door. Then Olsen pushed the door open, put a gun against her, and told her not to move. Olsen went to the bartender and demanded

the money. The bartender handed the money to him, and then Olsen ran out the door, and went around the corner into the parking lot.

Mr. Ranger testified as follows: He is the proprietor of the Ranger Liquor Store in Santa Monica. On December 14, 1956, about 8:45 p. m., he and his wife were in the liquor store. At that time Olsen came to the counter in the store and asked for a bottle of "V. O." When Ranger put the bottle on the counter, Olsen pulled a gun on Ranger and said, "This is a holdup." Olsen said he wanted everything that was in the register. After Mrs. Ranger handed the bills to him, he told her to give him the silver. She handed him the silver, including many dimes. Then Olsen said he wanted one of the pretty bottles. When a bottle of "Old Forester" was placed beside the "V. O." bottle, Olsen said he wanted the bottles put in separate sacks. Ranger put them in separate sacks, then Olsen took the bottles and money (about $124) and left. Defendant was not in the store that evening. He (witness) was acquainted with defendant in that about two years previously defendant, who was then operating a Christmas tree lot in front of the store, came into the store at times to get change.

Mrs. Ranger testified in substance the same as Mr. Ranger testified.

Olsen, a witness called by the People, testified that he met defendant in October, 1956, and thereafter he saw defendant frequently. He stayed at defendant's living quarters one or two nights a week for about two weeks, around the time he met defendant. In the evening of November 21, 1956, he and defendant talked about committing a robbery and they went in defendant's 1955 or 1956 Chevrolet automobile, which defendant was driving, to a motel near Ted's Grill. Defendant lived at the motel. Defendant said he would go in and case Ted's Grill. Defendant went in there, and after he came out he said it looked all right, and he would go back in there and that Olsen should come in about five minutes later and sit down, and when defendant mentioned "Pasadena," Olsen should pull the gun and hold up the place. After a few minutes Olsen entered and sat at the bar. Olsen did not want to hold up the place at that time, because people were sitting behind him. When the bartender closed the bar and told the persons in there to go home, Olsen followed the other persons and defendant out the door. Then he, Olsen, went back in, pointed the gun at the waitress, went to the bar, and robbed the bartender. Then Olsen left the place and ran to defend-

ant's room in the motel, where Olsen and defendant counted the money and each took half of it.

Olsen testified further that on December 14, 1956, he and his wife were celebrating their wedding at a bar in Santa Monica and he saw defendant there. Then Olsen, his wife, defendant, and three other persons went to another bar. After they were there a while, defendant said he would have to leave. Defendant left about 8:30 p. m. but returned soon. Then, while Olsen's wife and Pat Britain were out of the room, defendant said, "Let's get the liquor store up there on Wilshire." Defendant asked if Olsen had the gun with him. Olsen replied that he did not have it. Then they went in defendant's car to Olsen's home, where Olsen changed his clothes, put some brown make-up on his face, and got the loaded gun. Then they went in defendant's car to the Ranger Liquor Store. Defendant parked the car in the alley behind the store and said, "Good luck. This is it." Defendant said he knew the persons in there. Olsen went alone into the store and asked Ranger for "V. O." and then held the gun on him and demanded the money. Olsen also asked for a bottle of ".Old Forester." He took the money and the two bottles, left the store, got into the car, and they drove away. While they were driving away, Olsen changed his clothes—ripped his shirt off and threw it away. He also changed his pants. Then they went to the apartment of one Barber. (Barber had been present at the wedding celebration.) Olsen gave the bottles to Barber as a Christmas present. Then Olsen put the money on the bed, and he and defendant sat on the bed and divided the money equally between themselves. Barber was present while the money was being divided. Then Olsen went to get his wife. When they returned, defendant was gone. Olsen was arrested later that evening. He had been convicted previously of violating the Dyer Act, a felony. He had committed eight robberies in Santa Monica, and at the time of the trial he was serving a term in the county jail for one of the robberies. He owned a 1939 Chevrolet automobile in December, 1956.

Miss Britain, called as a witness by the People, testified as follows: On December 14, 1956, she, Olsen, and Mrs. Olsen went to a bar (Brownie's) in Santa Monica, where they met defendant, Barber, and one Guggemos about 6:30 or 7:30 p. m. Thereafter all of them went to another bar (Circus Room). About 8:30 p. m. defendant left that place, stating that he had a date. About a minute later, Olsen left. Later

that evening she saw Olsen at her apartment, when the officers brought him there.

Mrs. Olsen, called as a witness by the People, testified: On December 14, 1956, she and her husband Olsen (witness herein) met the group consisting of Barber, Britain and defendant at Brownie's bar, and later all of them went to the Circus Room. Defendant left that place between 8:00 and 8:30 p. m., stating that he had a date. About a minute later Olsen left, stating that he was going with defendant. She saw Olsen later that evening when the officers brought him to Miss Britain's apartment.

Barber, called by the People, testified: He had known Olsen several months, and Olsen had worked for him at his café. He (witness) was with said group of persons at the Circus Room on December 14. He remembered that defendant and Olsen left the group that evening. Later that evening he saw defendant and Olsen at his (witness') apartment, and at that time Olsen gave him a bottle of ''V. O.'' and a fancy bottle of ''Old Forester.'' Defendant and Olsen were in his apartment a few minutes and they were sitting on the bed or couch. While they were there he saw money between them and they were counting money. Later that evening he took the fancy bottle to Brownie's where he and others drank the whiskey, and he put the bottle in a trash box in the alley back of Brownie's bar.

Officer Kocher testified that on December 15, 1956, about 1 a. m., he found a shirt (Exhibit 3) by the curbing; he was directed to it by Olsen; he also found a fancy ''Old Forester'' bottle in a trash box in the alley near Brownie's; he was directed to it by Barber; he found two buttons (Exhibit 5) and two dimes (Exhibit 6) in a 1956 Chevrolet automobile (defendant's automobile); those buttons were in the back seat of the automobile, and the dimes were on the floor on the passenger side of the automobile; he had a conversation with defendant as to the description of his automobile and defendant described the Chevrolet where the buttons and dimes were found; defendant gave him a key to the automobile and told him he could look in the automobile; the officer found that the automobile was locked and the windows were closed; defendant said that he had nothing to do with the robberies.

The deputy district attorney stated for the record that four buttons were missing from the shirt, and that the buttonholes opposite the places where the buttons had been were in a torn condition.

Four men, who were prisoners and were with Olsen and defendant in the sheriff's bus on the way from jail to court, testified to the effect that they (witnesses) heard Olsen tell defendant that as soon as all the charges against Olsen, except one, were dropped he was going to say that defendant was innocent.

Defendant testified that it was possible that Olsen could have used defendant's car; he (defendant) had lent the car to Olsen once, and that defendant left the car unlocked most of the time, and he kept an extra key to his car under the floor mat of the car; Olsen lived with defendant for a while; he (defendant) was at Ted's Grill about 1 or 2 o'clock drinking beer, and while he was there Olsen came in and they had mentioned the word "Pasadena" in connection with a job in Pasadena which defendant had applied for; after defendant left Ted's Grill he walked home, about two blocks away, and went to bed; he did not have anything to do with the holdup at Ted's Grill or at Ranger's store.

Defendant testified further that on Friday, December 14, 1956, about 4:30 p. m., he returned from Tijuana and he went to Brownie's bar; at that time he was drunk; he had been drinking whiskey and beer all day Thursday, all of Thursday night, and all day Friday (during his trip to Tijuana); he drank champagne and everything with the party group at the Circus Room; he left that room and the party group and at that time he probably said he had a date, but he could not remember clearly; he did not remember when he left that place; he walked to his hotel, lay upon the bed, and went to sleep; he got up about 11 o'clock and went back to Brownie's where he was arrested; he did not go any place with Olsen; he did not recall having seen Olsen after he (defendant) left the Circus Room; he did not sit on a bed in Barber's room, and he and Olsen did not count and divide money which had been taken from the Ranger holdup; he had been to Pasadena before November 22, 1956; he might have told the officers, on December 16, that on the evening of December 14 he went to his hotel room at 6 o'clock in the evening and stayed there until 10:30 o'clock.

Officer Kocher testified, on rebuttal, that on December 15, 1956, defendant said that he had returned from Tijuana about 4 p. m. on December 14; he left the Circus Room on December 14 about 6 p. m., moved his car and returned to the Circus Room; he left that place again and went to his hotel room about 6:30 p. m. and he remained there until

10:30 p. m., when he returned to Brownie's where he was arrested.

Olsen testified, on rebuttal, that he did not make the statement which the four bus passengers said he made.

Appellant contends, as above stated, that the testimony of the accomplice Olsen was not corroborated.

■ "Corroborating evidence is sufficient if it tends to connect the accused with the commission of the crime in such a way as may reasonably satisfy the jury that the witness who must be corroborated is telling the truth; it must be considered without the aid of the testimony which is to be corroborated, and is insufficient if it requires the interpretation and direction of such testimony in order to give it value. [Citation.] ■ Corroborating evidence need not be direct but may be circumstantial. [Citation.] It need not extend to all the elements of the offense, nor to every detail included in the testimony of the witness to be corroborated; it is sufficient if it tends, in some slight degree to implicate the accused." (*People* v. *MacEwing*,* (Cal.App.) [314 P.2d 977].)

■ "In considering the question of corroboration, the relationship of the parties and their acts and conduct are competent evidence to be considered, and since corroboration need not be by direct evidence, the entire conduct of defendant may be looked to for corroborating circumstances and if, from those circumstances, his connection with the crime may be fairly inferred, the corroboration is sufficient. . . ." (*People* v. *Willmurth*, 77 Cal.App.2d 605, 611-612 [176 P.2d 102].)

In *People* v. *Wayne*, 41 Cal.2d 814 [264 P.2d 547], it was said at page 822; "The corroborative evidence may be slight and entitled to little consideration when standing alone." ■ It was also said therein at page 823, in quoting from another case: " '[W]here a material fact is established by evidence and it is shown that a defendant's testimony as to that fact was wilfully untrue, this circumstance not only furnishes a ground for disbelieving other testimony of this defendant [citations], but also tends to show consciousness of guilt or liability on his part and has probative force in connection with other evidence on the issue of such guilt or liability. Such false testimony is in the nature of an admission from which with other evidence guilt or liability may be inferred [citations].' "

*A rehearing was granted on October 3, 1957. The final opinion, reading substantially as above, is reported in 155 C.A.2d 117, 123 [317 P.2d 82].

■ In the present case there was evidence, other than the testimony of Olsen, which tended to implicate defendant in the robberies. Such evidence was as follows: Defendant arrived at Ted's Grill a few minutes before Olsen arrived there. Defendant was sitting at the bar talking with Olsen about half an hour preceding that robbery and, although they were acquaintances and Olsen had lived with defendant, they acted and talked as if they were strangers. Statements which defendant made there, in the presence of the bartender and waitress, regarding Pasadena and the kind of automobile defendant owned, were false. Defendant delayed the drinking of his second glass of beer until closing time and until the bartender took the glass from him, although the bartender had told him, at the time of serving the beer, that it was about time to close the bar and defendant would have only a short time in which to drink the beer. At the time defendant was delaying the drinking of his beer after closing time had been announced, four other patrons were at a table back of defendant and Olsen. Defendant and Olsen were the last ones to go to the door. The waitress testified that defendant and Olsen went to the door together. Defendant testified that he did not know when Olsen left. Immediately after defendant stepped outside the door, Olsen stepped back into the room and placed a gun against the waitress who was near the door. Defendant knew the Rangers and had been in their store several times. Defendant and Olsen were present with the party group at the Circus Room about 8:30 p. m. on December 14 shortly before Olsen entered the nearby Ranger store and robbed the Rangers. That robbery was committed about 8:45 p. m. A few minutes before that robbery, defendant left the party, but he returned soon. A few minutes later he left again, stating that he had a date. Olsen left the party about a minute after defendant had left the second time. When Olsen left he told the remaining persons at the party that he was going with defendant. Thereafter, during that evening, Barber was present at his apartment when defendant and Olsen were there for a few minutes, and he saw defendant and Olsen sitting on a bed or couch in his apartment and at that time he saw money between them and he saw them counting and dividing the money. Also while defendant and Olsen were at Barber's apartment, Olsen gave Barber a fancy bottle of "Old Forester." Defendant denied that he was in Barber's apartment during that evening and that defendant and Olsen counted money therein. Defendant testified that he did not remember when he left the party group at the Circus Room

that evening. Officer Kocher testified that, on December 15, defendant said that he (defendant) was in his own hotel room from 6:30 p. m. until 10:30 p. m. on December 14. Miss Britain testified that defendant left the Circus Room at 8:30 p. m. Mrs. Olsen testified that defendant left that room between 8:00 and 8:30 p. m. About four hours after the Ranger robbery, Officer Kocher found a shirt near a street curb, and four buttons were missing from the shirt. He also found two buttons in the back seat of defendant's automobile, and he found two dimes on the passenger side of defendant's automobile.

The testimony of Olsen was corroborated.

The judgment and the order denying motion for a new trial are affirmed.

Shinn, P. J., concurred.

Vallée, J., concurred as to Count II, and dissented as to Count III.

Appellant's petition for a hearing by the Supreme Court was denied April 23, 1958.