[Crim. No. 9111. Second Dist., Div. Two. Dec. 18, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. VICTOR ABBEY, Defendant and Appellant.

.

Robert E. Ford for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Gordon Ringer, Deputy Attorney General, for Plaintiff and Respondent.

FOX, P. J.—Defendant was charged in Count 1 with intercepting a telephone communication between "Sylvene D. Happennie and persons at the Bank residence in Los Angeles." In Count 2 he was charged with intercepting a telephone communication between Arthur W. Happennie and Ralph Walsh. He was found guilty of both counts. Defendant has appealed from the judgment. He has also attempted to appeal from the order denying his motion for a new trial but since such an order is not now appealable, the purported appeal therefrom must be dismissed.

In view of the nature of defendant's attack upon the judgment, it is necessary to give the factual picture in considerable detail. On April 18, 1962, Peggy Bollard accompanied defendant in his 1962 Mercury to a position west of Coldwater Canyon off Mulholland Drive. They arrived at approximately 6:45 p.m. and remained there for some two and one half hours. Defendant told Peggy that he was going to listen to and record some telephone conversations and that he had been at this location many times before for the same purpose. Peggy had met defendant while he was working for her sister in a divorce action and had been advised that he was a private detective.

Around 7:30 p.m. Peggy heard a phone dial, then heard two men each say "hello" and discuss stocks and a court hearing that was to take place on April 23, 1962. The name "Ralph" was mentioned. This conversation lasted approximately 10 minutes. On April 18, 1962, Harry Happennie lived at 3141 Coldwater Canyon, North Hollywood. At around 7 o'clock that evening, Mr. Happennie placed a call from his telephone which had a Triangle number to Ralph Walsh at the Balboa Country Club. He told Walsh that he had asked or was going to ask the federal court to allow him to remain as a defendant in a pending lawsuit. This call lasted 5 to 10 minutes. Walsh testified that he received a telephone call from Harry Happennie during the evening of April 18, 1962. They discussed whether Happennie should withdraw from the federal court litigation. They also discussed the fact that someone was attempting to purchase 220,000 shares of stock of McMillan Petroleum Company. According to Walsh, this conversation lasted probably 10 minutes.

Between 7:45 and 8 o'clock that evening, Peggy heard a conversation between a woman and a child. The child was asked if her mother was home and answered that she was not.

The woman inquired if the child was home for Easter and whether the family had moved. Peggy estimated that the conversation lasted only a couple of minutes. Happennie's wife, Sylvene, testified that she placed a telephone call during the early evening of April 18, 1962, using her Triangle number. She talked to a little girl at the Bank residence for some three minutes. According to Mrs. Happennie, the child, on being questioned, stated that her mother was not home. A move from one apartment to another, as well as the Easter holiday were among the subjects discussed. Mrs. Happennie and her husband testified that they did not give permission to defendant to listen to their telephone calls or to install a listening device on their telephone line. It was stipulated that no permission had been given by the telephone company.

Defendant's girl friend, Edith Wissman, later joined defendant and Peggy at the Coldwater Canyon rendezvous on the evening of April 18. This was after the above mentioned telephone conversations had been concluded. Edith testified that she had been with defendant in this same area during the previous month. During the conversation on the evening of April 18 defendant told Edith that he had an ex-felon under surveillance and that he had served a federal subpoena upon him. Edith concluded that Mr. Happennie was under surveillance as she had accompanied defendant when he served Happennie. Happennie testified that defendant had served him with a summons in connection with the lawsuit he discussed over the telephone with Ralph Walsh. He also admitted having suffered two prior felony convictions. Later, on the evening of the 18th Edith left defendant's car and went to see Mr. Happennie. As a result of his conversation with Edith, Happennie called the district attorney.

Peggy Bollard described equipment in defendant's car over which she heard the two conversations. The car contained an electronic device, in addition to a regular car radio, located under the dashboard where the air conditioner is usually placed. This device had a dial that defendant adjusted to eliminate static when the telephone conversations were in progress. In addition there was a small case that had a button that defendant pressed or turned when the telephone conversation commenced. Later defendant locked this case in the trunk of his car.

Edith Wissman testified that defendant owned a Chevrolet before purchasing the Mercury. The Chevrolet contained a

two-way radio system. She had observed at various times prior to April 18 that the Mercury had a receiver, sort of microphone type, and coil wire. On various occasions she had heard static and other noises emanating from this equipment.

The events of the evening of April 18 occurred on the property of Thomas Bodley at 2331 Coldwater Canyon Lane. Early in 1962 defendant, who represented himself as a licensed California investigator, asked Bodley for permission to use his property for investigating a swindle. Defendant told Bodley that he was able to contact other automobiles while parked on his property. Bodley observed that defendant's car contained a radio similar to police car equipment. On one occasion defendant hung up as Bodley approached his car. Defendant used Bodley's property upon several occasions.

Fred East, an electronic equipment expert with the district attorney's office, testified that he went to the Happennie home on April 20, 1962. East was able to monitor calls from the telephone in the Happennie home by using equipment in his car. He monitored calls up to a distance of 3 miles from that residence. According to Clayton Anderson of the district attorney's office, the Happennie residence was one mile from the Bodley property and separated from it by a canyon.

On April 23, 1962, a telephone tap transmitter was removed from a wire attached to a telephone pole on the Happennie property. After its removal it was impossible for East to monitor the Happennies' telephone calls. Due to its weathered condition East concluded that the device had been attached for at least three weeks.

Defendant did not take the stand and no evidence was presented in his behalf.

In disposing of the case, the trial court took the position that Peggy Bollard was an accomplice of the defendant. Upon this assumption (which is not seriously challenged) it is necessary that her testimony be corroborated in order for the conviction to stand. (Pen. Code, § 1111.)

In seeking a reversal, defendant's sole contention is that there is no evidence corroborating her testimony that tends to connect him with the commission of the alleged offenses. ■ The basic principles governing the sufficiency of corroboration may be stated as follows: ''Corroborating evidence is sufficient if it tends to connect the accused with the commission of the crime in such a way as may reasonably satisfy the

jury that the witness who must be corroborated is telling the truth; it must be considered without the aid of the testimony which is to be corroborated, and is insufficient if it requires the interpretation and direction of such testimony in order to give it value. (*People* v. *MacEwing*, *supra*, 45 Cal.2d 218, 224 225 [288 P.2d 257], and cases cited.)

█ ''Corroborating evidence need not be direct but may be circumstantial. It need not extend to all the elements of the offense, nor to every detail included in the testimony of the witness to be corroborated, and it has been held that it is sufficient if it tends, in some slight degree, to implicate the accused. (*People* v. *Griffin*, 98 Cal.App.2d 1, 24-25 [219 P.2d 519], and cases cited.) █ The weight of the corroborating evidence is a question of fact for the jury to determine. (*People* v. *Trujillo*, 32 Cal.2d 105, 112 [194 P.2d 681].)'' (*People* v. *MacEwing*, 155 Cal.App.2d 117, 123 [317 P.2d 82].).

█ The testimony of Peggy Bollard that she heard the two conversations, together with evidence of the installation of the monitoring device on a telephone pole on the Happennie property and the testimony of Mr. and Mrs. Happennie and Walsh as to the contents of the intercepted conversations, was ample to establish the corpus delicti of the two offenses. █ It was not necessary that all elements of the offenses be established by evidence independent of Peggy's testimony: (*People* v. *Barclay*, 40 Cal.2d 146, 156 [252 P.2d 321]; *People* v. *Gallardo*, 41 Cal.2d 57, 63 [257 P.2d 29]; *People* v. *Simpson*, 43 Cal.2d 553, 563 [275 P.2d 31].)

█ The following evidence, aside from Peggy's testimony, was ample, standing alone, to connect defendant with the two offenses in such a way as reasonably to persuade the trial court that she testified truthfully: (1) a monitoring device had been placed on the Happennie telephone line without permission some time prior to April 18; (2) defendant had served a subpoena on Mr. Happennie in connection with the lawsuit discussed over the telephone with Walsh; (3) Mr. Happennie had suffered two prior felony convictions; (4) defendant told his girl friend, Edith, that he had an ex-felon under surveillance on the evening of April 18; (5) this last statement was made at a location that defendant had been using for the purposes he described as investigative to Bodley, the owner of the property; (6) the location was a mile from the Happennie residence, separated from it by a canyon and presumably beyond the range of visual surveil-

lance, but, according to witness East, within the monitoring range; (7) defendant's girl friend, Edith, understood Mr. Happennie to be the ex-felon referred to by him on the night of the 18th; (8) Edith observed that the car defendant was driving contained radio equipment other than the normal car radio and he had explained to Bodley that he could contact other cars while parked on Bodley's property.

There is considerable force in defendant's argument that no one of these incidents is of particular significance in connecting him with the asserted offenses. Hence, he contends, the corroboration is not sufficient. But when the evidence of these several incidents is considered together a picture of added significance is developed—one that "tends ... to implicate the accused" and to connect him with the commission of these offenses in such a way as reasonably to satisfy the trier of fact that Peggy was telling the truth. In this connection it must not be overlooked that it was the province of the trier of fact to determine the inferences reasonably to be drawn from this combination of incidents and the weight that should be given to them.

It will be recalled that defendant did not take the stand in his own defense. Although this circumstance in itself did not constitute corroboration of Peggy's testimony, defendant's failure to deny or explain evidence presented against him, when it was in his power to do so, was a matter for the consideration of the trier of fact as tending to indicate the truth of such evidence, and as indicating that among the inferences that may reasonably be drawn therefrom, those unfavorable to the defendant are the more probable. (*People v. Adamson*, 27 Cal.2d 478, 489 [165 P.2d 3]; *People v. Goldstein*, 139 Cal.App.2d 146, 155 [293 P.2d 495].) This principle particularly applies to the evidence of defendant's statement to Edith that he had an ex-felon under surveillance. What he meant by that statement was a fact peculiarly within his own knowledge, a meaning which his testimony and his alone could clarify.

The purported appeal from the order denying defendant a new trial is dismissed. The judgment is affirmed.

Herndon, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 5, 1964.